UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SAMUEL J. LASSOFF,                  :
                                    :    HONORABLE JOSEPH E. IRENAS
          Plaintiff,                :
                                    :    CIVIL ACTION NO. 05-2261 (JEI)
     v.                             :
                                    :
STATE OF NEW JERSEY, et al.,        :         **OPINION**
                                    :
          Defendants.               :


**APPEARANCES:**

LASSOFF LAW ASSOCIATES
SAMUEL J. LASSOFF
1616 Walnut Street, Suite 1105
Philadelphia, PA 19103
          Counsel for Plaintiff

OFFICE OF THE ATTORNEY GENERAL
KENNETH B. GOODMAN
R.J. Hughes Justice Complex
CN 112
25 Market Street
Trenton, NJ 08625
          Counsel for Defendants State of New Jersey, New Jersey
          State Police, and Nazareno Nepi

ZARWIN, BAUM, DEVITO, KAPLAN, SHAER & TODDY, PC
GARY A. DEVITO
Five Greentree Centre, Suite 105
Marlton, NJ 08053
          Counsel for Defendants City of Atlantic City, Atlantic
          City Prosecutors Officer, Billie J. Moore, Esq., and
          Christopher D. Robertson, Esq.

COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
RUSSELL L. LICHTENSTEIN
1125 Atlantic Avenue, Third Floor
Atlantic City, NJ 08401
          Counsel for Caesars Entertainment Inc., Bally's Park
          Place, Inc., Mike Flemming and Eric Denmead

1

**IRENAS**, Senior District Judge:

Plaintiff asserts many civil rights and tort claims against a large group of defendants arising out of Plaintiff's physical confrontation with another patron at an Atlantic City casino and the events, including the criminal charges brought against Plaintiff, that followed.  Presently before the Court are: (1) the Motion to Dismiss of Defendants State of New Jersey, New Jersey State Police, and New Jersey State Trooper Nazzareno F. Nepi ("Trooper Nepi") (collectively the "New Jersey State Defendants"); (2) the Motion to Dismiss of Defendants Caesar's Entertainment, Inc., and Bally's Park Place, Inc. (collectively "Bally's"); and (3) the Motion to Dismiss of Defendants Mike Flemming and Eric Denmead.

I.

Plaintiff, Samuel Lassoff ("Lassoff") alleges that he was physically "attacked" by Defendant Taylor[1] on November 1 or 2, 2002,[2] while playing poker at Defendant Bally's Casino ("Bally's") in Atlantic City.  According to Lassoff, Taylor grabbed him by the throat and "ripp[ed] his shirt off his neck." (Am. Compl. ¶ 18)  Lassoff does not allege what, if any, events

---

[1]  The alleged assailant's first name is unclear.  The Amended Complaint refers to this Defendant as both "Brian R. Taylor" and "Robert R. Taylor." (Am. Compl. ¶¶ 17-18, 22-25)

[2]  Plaintiff's Amended Complaint and brief in opposition to the present motion appear to use both dates interchangeably.

led up to the confrontation.  Moreover, other than a ripped shirt, Lassoff does not specifically allege what injuries he suffered in the scuffle.[3]

Bally's security personnel[4] were called to the poker table and the New Jersey State Police were contacted.  Upon Defendant Trooper Nepi's arrival, he and Bally's personnel "conducted a brief investigation and asked Mr. Lassoff if he wanted to press charges against [Taylor]."  (Am. Compl. ¶ 22)  Lassoff then left the casino gaming room with the Bally's personnel and Trooper Nepi in order to lodge a formal complaint against Taylor.

Despite Lassoff's allegations that he voluntarily left the room "for the limited purpose of making a complaint against his attacker" (Am. Compl. ¶ 25), he also alleges that he requested that his attorney, Lisa M. Kaplan,[5] be present during the "questioning and/or custodial investigation(s)" that followed. (Am. Compl. ¶ 26-27)  Allegedly Trooper Nepi and the Bally's personnel intentionally denied Lassoff the assistance of counsel.

Lassoff further asserts that he was taken to a "cell" on the fourth floor of the casino where Trooper Nepi inflicted an "Iraq prison style" beating on Lassoff, "slamming him against the wall"

---

[3]  Lassoff also does not allege whether Taylor suffered any injuries.

[4]  Bally's Security Officers Mike Flemming, Dori Diaz, and Eric Denmead are named as Defendants to this suit, although their individual roles in the events that follow are not specified in the Amended Complaint.

[5]  Ms. Kaplan was with Lassoff at the casino when the incident occurred. (Am. Compl. ¶ 16).  Apparently the two were on a date.  (Opp. Br. at 8).

and "stripping him half-naked."  (Am. Compl. ¶ 29-30)
Afterwards, Bally's personnel and Trooper Nepi allegedly locked
Lassoff in the cell and continually ignored Lassoff's repeated
requests for his lawyer.

The next day Lassoff was charged with assault and disorderly
conduct arising out of the confrontation with Taylor.  He was
arraigned approximately two weeks later but the charges were
ultimately dismissed upon the prosecutor's motion on November 29,
2002.[6]

Lassoff filed a complaint against Trooper Nepi with the
Internal Affairs Division ("IAD") of the New Jersey State Police.
Thereafter Trooper Nepi "resurrected the charge of disorderly
conduct [against Lassoff] which he re-filed January 6, 2003,"
allegedly in retaliation for the statements Lassoff made in
connection with the IAD complaint. (Am. Compl. ¶ 53-55) Lassoff
further alleges that Defendant Assistant Atlantic City Prosecutor
Christopher Robinson ("Prosecutor Robinson") directed Trooper
Nepi to re-file the disorderly conduct charge[7] and "urged the
Casino Investigation Unit to lie about [Lassoff's] behavior and
actions toward [Trooper Nepi] and others while being escorted off

---

[6] The charges were dismissed for lack of prosecution.  (Am. Compl.
¶ 61)

[7] The Amended Complaint alleges that Lassoff was charged for the second
time under a different provision of the New Jersey Code of Criminal Justice.
(Am. Compl. ¶ 61)  Prosecutor Robinson allegedly explained that the original
charge was brought pursuant to a provision of the code that "'has been held
unconstitutional.'" (Id.)

the casino floor." (Am. Compl. ¶ 61)  The re-filed charge was eventually "terminated in favor of [Lassoff]."  (Am. Compl. ¶ 62)

Based on these events, Lassoff has filed the present suit against: the State of New Jersey, the New Jersey State Police,[8] and Trooper Nepi[9] (collectively the "New Jersey State Defendants"); the City of Atlantic City, the Atlantic City Prosecutor's Office, Municipal Prosecutor Billie J. Moore, and Prosecutor Robinson (collectively the "Atlantic City Defendants"); Caesars Entertainment Inc., Bally's Park Place, Inc. ("Bally's");[10] "Bally's Security Director," Bally's Surveillance Security Officer Mike Flemming, Bally's Security Supervisor Dori M. Diaz, Bally's Security Officer Eric Denmead; and lastly, Defendant Taylor.[11]

---

[8]  The Amended Complaint also names the "New Jersey State Police Division of Gaming Enforcement" as a Defendant.  The Division of Gaming Enforcement is part of the New Jersey State Attorney General's Office, Department of Law and Public Safety, not a division of the State Police.  *See* Division of Gaming Enforcement website at www.njdge.org.  "Criminal offenses that occur within [casinos] are investigated and prosecuted with the assistance of the Division of Criminal Justice's Casino Prosecutions Bureau and the Division of State Police's Casino Gaming Unit."  *Id.*  Whether Lassoff intends to name the Division of Gaming Enforcement or the Casino Gaming Unit of the State Police, either entity is an arm of the State of New Jersey.

[9]  Trooper Nepi is sued in both his official and individual capacities. (Am. Compl. ¶ 8)

[10]  Caesar's Entertainment, Inc., and Bally's Park Place, Inc., are misidentified as "Bally's Atlantic City & Wild Wild West Casino" and "Bally's Atlantic City" in the Amended Complaint.

[11]  The Amended Complaint also purports to names as defendants 136 "fictitious persons whose identities are unknown at the present time."

The ten-count complaint asserts against all Defendants:[12] false arrest; false imprisonment and assault and battery (Count 1); Section 1983 claims based on alleged violations of procedural and substantive due process (Counts 2 and 5); intentional and negligent infliction of emotional distress, defamation and false light (Count 3); negligence and gross negligence (Count 4); failure to train and supervise (Count 6); respondeat superior liability for claims asserted in Counts 1-6 (Count 7); conspiracy to commit assault and battery, false arrest and false imprisonment, unlawful search, invasion of privacy and false light and violations of Lassoff's due process rights (Count 8); and malicious prosecution (Count 9).  Count 10, entitled "Supplemental State Claims," re-asserts all the state common law torts alleged in the previous nine counts and adds spoliation of evidence and perjury allegations.  Lassoff seeks monetary damages on all counts.

The New Jersey State Defendants, Bally's, and Defendants Flemming and Denmead all move to partially dismiss the Amended Complaint.[13]  First we will address the New Jersey State Defendants' motion, considering arguments regarding Trooper Nepi

---

[12]  The Amended Complaint is by no means a model of clarity.  Where necessary, the Court will attempt to identify the intended defendants to a particular claim.  However most of the grounds upon which we dismiss do not require the Court to specifically match each claim to each Defendant.

[13]  As more fully explained in this Court's Order denying Plaintiff's Motions for Default Judgment, Defendant Dori Diaz apparently was no longer employed by Bally's at the time of service.  It does not appear that Ms. Diaz was ever properly served. No attorney has entered an appearance on her behalf.

in his official capacity and then in his individual capacity. Next, we will consider Bally's motion and Flemming and Denmead's motion together, as they are represented by the same counsel and their briefs are practically identical.

II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, the court will accept as true all of the factual allegations contained in the complaint and any reasonable inferences that can be drawn therefrom.  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Although the court must assume as true all facts alleged, "[i]t is not . . . proper to assume that the [plaintiff] can prove any facts that [are] not alleged."  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Finally, when "confronted with a [12(b)(6)] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law."  *Pennsylvania v.*

7

*PepsiCo., Inc.*, 836 F.2d 173, 179 (3d Cir. 1988) (emphasis added).

### III.

### A.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, absent express consent, the Eleventh Amendment renders states generally immune from suit by private parties in federal court. *Pa. Fedn. of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

Eleventh Amendment immunity extends to an unconsenting state's agencies or departments, provided that the state is the real party interest. *MCI Telecomm. Corp. v. Bell Atlantic-Pa. Serv.*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). The Eleventh Amendment also bars a suit against a state official in his or her official capacity because it "is not a suit against the official but rather is a suit against the official's office. As such it is it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

(1989).[14]

On the other hand, the Eleventh Amendment does not bar suits for damages against government officials sued in their personal capacities.  *Garden State Elec. Inspection Servs., Inc. v. Levin*, 144 Fed. Appx. 247, 251 (3d Cir. 2005).  "In personal capacity suits, a plaintiff seeks to impose personal liability upon an individual officer and recover from the personal assets of that officer."  *Id.*  Therefore, the Eleventh Amendment is not implicated because the State is not the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Accordingly, all claims for compensatory or punitive damages asserted against the State of New Jersey, the New Jersey State Police, and Trooper Nepi in his official capacity will be dismissed.  Because we will grant the motion to dismiss in favor of the State of New Jersey and the New Jersey State Police on all counts, and Trooper Nepi's motion to the extent he is sued in his official capacity, we have not considered these Defendants' other arguments for dismissal.[15]  However, we next address the

---

[14]   Claims brought pursuant to 42 U.S.C. § 1983 are no exception to Eleventh Amendment immunity. *Edelman v Jordan*, 415 U.S. 651 (1974); *see also Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540 (2002)(federal statutory grant of supplemental subject matter jurisdiction over state law claims under 28 U.S.C. § 1367 does not abrogate 11th Amendment immunity).

[15]   Among other things, the State of New Jersey, the New Jersey State Police, and Trooper Nepi in his official capacity assert that they are not "persons" within the meaning of 42 U.S.C. § 1983; that the State of New Jersey and the New Jersey State Police are entitled to absolute immunity from Lassoff's state law claims; and that the State of New Jersey cannot be held liable for alleged torts committed outside the scope of Trooper Nepi's employment.

remaining arguments insofar as they also apply to claims against Trooper Nepi in his individual capacity.

B.

Lassoff asserts a wide variety of tort claims against several Defendants, including Trooper Nepi in his individual capacity.  The Amended Complaint seeks recovery for false arrest, false imprisonment, assault and battery, defamation, invasion of privacy, false light, conspiracy, negligence, gross negligence, malicious prosecution, and intentional infliction of emotional distress (see Am. Compl. Counts 1, 3, 4, 6, 8, 9, and 10).

The New Jersey State Defendants assert that Lassoff's claims, to the extent they are based on alleged negligent conduct by Trooper Nepi in his individual capacity,[16] must be dismissed for failure to comply with the notice of claim provisions of the New Jersey Tort Claims Act ("TCA").

The New Jersey Tort Claims Act ("TCA") was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations.  N.J.S.A. § 59:1-2; *see also New Jersey Property-Liability Ins. Guar. Ass'n v. State*, 195 N.J. Super. 4, 12 (App. Div. 1984).  The TCA sets forth a procedural

---

[16]   While Lassoff asserts claims for negligence and gross negligence against Trooper Nepi, we note that none of the facts pled suggest any negligent conduct by Trooper Nepi.  Rather, Lassoff clearly asserts that Trooper Nepi's conduct was intentional and, with regard to the malicious prosecution claim, motivated by retaliatory animus toward Lassoff. Nevertheless, we will assume that the Amended Complaint does allege facts which constitute negligence and dismiss those claims based on the TCA.

10

framework for making claims against public entities and public employees.  *See* N.J.S.A. § 59:8-3.  Thus, before a claimant may file suit against a public entity or its employees, he must comply with the TCA's notice of claim provision.  N.J.S.A. §§ 59:8-3, 59:8-8.  A suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the "accrual of a cause of action."  N.J.S.A. § 59:8-8; *see also Sinclair v. Dunagan*, 905 F. Supp. 208, 212 (D.N.J. 1995) (Failure to provide notice within the statutory ninety day window is a ground for dismissal with prejudice).[17]

The notice provision of the TCA applies to both intentional and non-intentional torts, but with some limitation when claims are asserted against public employees.  In *Velez v. City of New Jersey*, 180 N.J. 284, 286 (2004), the New Jersey Supreme Court held that the notice of claim requirements under the TCA apply to common law intentional tort claims, but determined that its ruling would be prospective only.  Therefore, causes of action alleging intentional torts committed by public employees that accrued prior to June 29, 2004, are not subject to the notice of claim provisions.  *See, e.g., Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343-44 (App. Div. 2004).

_____

[17]  The accrual date under the TCA is generally the date on which the alleged tort is committed.  *See Beauchamp v. Amedio*, 164 N.J. 111, 117 (2000); *Pickney v. Jersey City*, 140 N.J. Super. 96, 99 (Law Div. 1976); *Torres v. Jersey City Med. Ctr.*, 140 N.J. Super. 323, 326 (Law Div. 1976).

With regard to the claims against Trooper Nepi, the accrual date appears to be November 2, 2002, the date on which the alleged incidents took place at the casino.[18]  This date is prior to the New Jersey Supreme Court's holding in *Velez*, and therefore only the non-intentional tort claims against Trooper Nepi are subject to the TCA's notice requirement.

Lassoff has not provided the Court with any reason to conclude that a notice of claim was filed at all, much less filed in a timely manner.  Indeed, though the New Jersey State Defendants expressly move to dismiss for lack of notice pursuant to the TCA (see N.J. State Defs.' Br. at 35-38), Lassoff's opposition completely ignores the issue.  Therefore, absent any allegation of TCA notice compliance, all non-intentional tort claims against Trooper Nepi in his individual capacity[19]-- including negligence and gross negligence (see, e.g., Am. Compl. Counts 3, 4, and 10)-- will be dismissed.


                              C.

Count 8 of the Amended Complaint appears to allege a cause

---

[18]  Lassoff could have, but has not, argued that the accrual date is as late as January, 2003, when the new charges were filed against him.  Even if we used an accrual date of January, 2003, our ultimate conclusion does not change.

[19]  Suits against a public officer in his individual capacity are subject to the notice provisions of the TCA even though the public officer is not entitled to immunity under N.J.S.A. § 59:3-14.  *See Velez*, 180 N.J. at 289, 293 (holding that claim for assault and battery committed by public official acting outside scope of employment is subject to TCA notice requirements).

of action under 42 U.S.C. § 1985(3)[20] and common law civil conspiracy.  Lassoff asserts that Defendants[21] acted in concert and conspired to commit torts against him.  They then, according to Lassoff, took further steps "in order to conceal their unlawful and unconstitutional conduct and in an attempt to deny Plaintiff. . . access to the Courts and to due process."  (Am. Compl. at ¶ 74)

A claim under § 1985(3) must include allegations by the plaintiff that the defendants were "motivated by a class-based invidiously discriminatory animus," and that they "conspired to deprive plaintiff of the equal protection rights of the laws or of equal privileges and immunities under the laws."  *Bougher v. University of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The Amended Complaint does not allege that the conspiracy

---

[20] Section 1985(3) provides for civil liability for conspiracies to interfere with civil rights, stating "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

[21] Count 8 is asserted against the New Jersey State Defendants, Trooper Nepi, Bally's and Defendants Diaz, Flemming and Denmead.  Because we hold that Lassoff has failed to state a federal statutory claim for conspiracy to violate his civil rights, the federal claim in Count 8 will be dismissed as to all moving Defendants.

against Plaintiff was class-based; indeed, it fails to identify a
class of which Plaintiff is a member.  Further, even the most
liberal reading of the Amended Complaint does not support the
inference that any of the Defendants possessed the requisite
invidiously discriminatory animus.  Therefore, Count 8 of the
Amended Complaint will be dismissed to the extent it asserts a
§ 1985(3) claim against Trooper Nepi in his individual capacity,
Bally's, and Defendants Flemming and Denmead.  However, no
Defendant has moved to dismiss the common law civil conspiracy
claim.  Therefore Count 8 will remain as a state common law claim
against all Defendants.

D.

     In Count 9, Lassoff appears to allege a violation of § 1983
based upon a claim of malicious prosecution.[22]  Plaintiff was
required to appear in court on two occasions.  First, he was
arraigned on November 15, 2002, on charges that were dismissed on
November 29, 2002.  On January 6, 2003, a new charge was filed,
and Plaintiff opposed that charge through an attorney.  He
asserts that the proceedings "terminated in his favor" without
further elaboration.  (Am. Compl. at ¶ 92)

     Such a § 1983 claim cannot be based upon the generalized

---

     [22]  To the extent Count 9 (and also Counts 3 and 10) asserts a state
common law malicious prosecution claim against Trooper Nepi in his individual
capacity, that claim will remain as the New Jersey State Defendants have not
moved to dismiss it.

notion of substantive due process, but rather must be grounded in a particular constitutional amendment that "provides an explicit textual source of constitutional protection against a particular sort of government behavior." *Albright v. Oliver*, 510 U.S. 266, 272-73 (1994); *see also Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998).

Interpreting *Albright,* the Third Circuit has explained that "prosecution without probable cause is not, in and of itself, a constitutional tort." *Gallo v. City of Philadelphia*, 161 F.3d 169, 173 (3d Cir. 1998). The constitutional violation that is implicated in malicious prosecution claims is the deprivation of liberty accompanying the prosecution. *Id.* "[A] plaintiff asserting a malicious prosecution claim must show 'some deprivation of liberty consistent with the concept of seizure.'" *Id.* (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)). Thus, we focus on the seizure allegation, if any, in Count 9.[23]

To state a claim, Plaintiff must allege that a state actor violated his Fourth Amendment rights by initiating the malicious prosecution. The alleged Fourth Amendment violation must include a claim that "the criminal charges at issue . . . imposed some deprivation of liberty consistent with the concept of a seizure."

---

[23] Count 9 does not specifically identify the constitutional right that has allegedly been violated. We proceed under the assumption that Plaintiff claims that he was subject to a "seizure" under the Fourth Amendment.

*Britton v. Maloney*, 196 F.3d 24, 28 (1st Cir. 1999) (citation and quotations omitted).  Merely alleging the elements of common law malicious prosecution is insufficient, as all § 1983 claims "derive first and foremost from the Constitution itself, not necessarily from the analogous common law tort." *Calero-Colon v. Betacourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995).

The First Circuit addressed a similar fact pattern in *Britton* and found that there was no seizure, and thus no constitutional violation.  The plaintiff, Britton, was never arrested or detained on the criminal charges serving as the basis for his malicious prosecution claim.  *Britton,* 196 F.3d at 29. The criminal summons was sent in the mail to Britton.  *Id.*  The First Circuit found that no restrictions on Britton's liberty were imposed, aside from the legal obligation to appear in court on a future date.  *Id.*  He was not required to post bond and he was not restricted as to where he could travel.  *Id.*  The court concluded that the potential to be arrested if he did not appear on the scheduled date did not rise to a constitutional violation. *Id.*

On the other hand, the facts of the instant case are not like those found in *Gallo*, a case in which the Third Circuit found that a seizure did occur even though there was no forcible detention.  *Gallo*, 161 F.3d at 222.  Although not physically detained, the plaintiff was subject to a number of pre-trial

release conditions, namely he was required to post a $10,000 bond, attend a number of court hearings, contact Pretrial Services on a weekly basis.  In addition, his ability to travel freely was restricted; he could not go beyond New Jersey or Pennsylvania.  *Id.*; *cf. Bristow v. Clevenger*, 80 F. Supp. 2d 421 (M.D. Pa. 2000) (analyzing the facts under *Gallo* and finding that there was no seizure where plaintiff had waived her preliminary hearing, appeared in court for a pretrial conference, was fingerprinted and photographed at the police station, and where the charges were later dismissed).

Lassoff does not allege any seizure or limitation on his liberty in connection with his malicious prosecution claim.[24] Nowhere in the Amended Complaint, nor in his opposition papers, does Lassoff allege that he was required to post bond or contact the court or pre-trial services.  He also does not claim that he was subject to travel restrictions or any other restriction on his lifestyle.  He simply was directed to appear on a certain date, and did appear.  Drawing all inferences favorable to Plaintiff, the Amended Complaint does not contain any facts that would support a claim under § 1983 for malicious prosecution. Therefore, Lassoff's § 1983 malicious prosecution claim will be dismissed.

---

[24] Lassoff alleges that he was locked in a cell in the casino but that deprivation of liberty was not imposed as a result of the alleged malicious prosecution.  It occurred before Lassoff was charged with any crime.

E.

Count 6 of the Amended Complaint appears to allege a "failure to train, supervise, or discipline" claim, under § 1983. This type of claim is employed by plaintiffs to hold municipalities liable for § 1983 violations of their employees. *See City of Oklahoma v. Tuttle,* 471 U.S. 808 (1985); *see also* Karen M. Blum and Kathryn R. Urboyna, Federal Judicial Center, Section 1983 Litigation 58-59 (1998).

The Defendants charged in Count 6 appear to be the State of New Jersey, the New Jersey State Police, and Trooper Nepi. We have already set forth our reasons for terminating the State and the State Police as parties, leaving Trooper Nepi as the only remaining named Defendant to Count 6.

Since the "failure to train" claim is reserved only for municipal liability, Count 6 will be dismissed in its entirety. *See City of Canton* v. Harris, 489 U.S. 378, 388 (1989) (holding that "failure to train" liability under § 1983 is reserved only for those instances where the *municipality* acted with deliberate indifference).

Moreover, as explained next, Lassoff does not allege that Trooper Nepi had any supervisory authority over any person for which a duty to train or supervise would arise in the first place.

18

F.

Count 7 of the Amended Complaint is titled "Respondent [sic] Superior" and alleges that Defendants State of New Jersey and New Jersey State Police are responsible and liable for the acts alleged in Counts 1 - 6.  Count 7 seeks judgment against the State of New Jersey, the New Jersey State Police and Trooper Nepi.

Lassoff cannot state a claim against Trooper Nepi, the only remaining named Defendant to Count 7.  The Amended Complaint alleges that Trooper Nepi himself committed torts, and does not allege that he was supervisor of any kind to any person. Therefore he cannot be held liable under a theory of respondeat superior, which requires a master-servant relationship.  *See Carter v. Reynolds*, 175 N.J. 402, 409 (2003) ("If no master-servant relationship exists, no further inquiry need take place because the master-servant relationship is *sine qua non* to the invocation of respondeat superior.")  Count 7 of the Amended Complaint will be dismissed in its entirety.


G.

We next turn to the arguments for dismissal of Defendants Bally's, Flemming, and Denmead.  First, they urge the Court to dismiss the entire Amended Complaint for failure to comply with Fed. R. Civ. P. 8 and 10.  Counsel for these Defendants complains that "Plaintiff has ignored the[se] rules and filed a complex,

overly long, incoherent, and unnecessarily repetitive Amended
Complaint."  (Bally's Br. at 4)

To be sure, Lassoff's Amended Complaint lacks clarity and
logical organization.  However, we do not find the Amended
Complaint so woefully deficient as to warrant dismissal.  We note
that the Amended Complaint, which is double-spaced and written in
a reasonably large font, sets out 10 separate counts in 29 pages.
It demands specific relief in each count and identifies statutes
under which claims are made.  The Amended Complaint gives
adequate notice of the claims asserted.  Under these
circumstances, we will not dismiss the Amended Complaint based
only upon Lassoff's imprecision in pleading his case.  *See*
*Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)("Prolixity
is a bane of the legal profession but a poor ground for rejecting
potentially meritorious claims.  Fat in a complaint can be
ignored, confusion or ambiguity dealt with by means other than
dismissal.  It takes a lot worse than using 12 pages to set out a
claim that could have been stated in 6 pages to justify a
dismissal under Rule 8(a).").

With regard to the merits of Lassoff's claims, Bally's and
Defendants Flemming and Denmead assert that Lassoff's § 1983
claims against them are legally insufficient because the Amended
Complaint does not allege that they were acting under color of
state law.  Lassoff's opposition ignores this issue.

The Amended Complaint alleges that Bally's security

20

personnel conspired with Trooper Nepi to deprive him of his
constitutional rights. (See Am. Compl. ¶ 34) ("On or about
November 2, 2002, Defendants, acting in concert and conspiracy,
did knowingly, intentionally, negligently, maliciously and/or
recklessly commit an assault and battery upon Plaintiff Samuel
Lassoff.")  In particular, Lassoff asserts that Bally's security
personnel acted in concert with Trooper Nepi, denying Lassoff the
assistance of counsel during their joint custodial questioning of
Lassoff.  (Am. Compl. ¶¶ 26-27)  He further alleges that he was
in the custody and control of Bally's security personnel when
Trooper Nepi beat him.  (Am. Compl. ¶ 30)

    "Although not an agent of the state, a private party who
willfully participates in a joint conspiracy with state officials
to deprive a person of a constitutional right acts 'under color
of state law' for purposes of § 1983."  *Abbott v. Latshaw*, 164
F.3d 141, 147-48 (3d Cir. 1998) (citing *Dennis v. Sparks,* 449
U.S. 24, 27-28 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
152 (1970)).  Thus, Defendants Flemming and Denmead do not escape
potential liability by virtue of being private security guards.

    In *Abbott* the Third Circuit reversed the district court's
dismissal of a § 1983 claim against a private person.  While the
complaint did not explicitly allege a conspiracy between the
private actor and the state actor, the complaint alleged specific
facts and "depict[ed] joint action" by the state actor and the
private actor.  *Abbott*, 164 F.3d at 148.  The Third Circuit

concluded that "the complaint easily satisfied the standards of notice pleading; no more is required of a plaintiff in § 1983 cases." *Id.*

Here we have an even more straightforward case.  Lassoff has explicitly asserted that Trooper Nepi and Bally's security personnel were "acting in concert" and "conspiring" with each other.  (Am. Compl. ¶ 34)  He has alleged facts, not merely conclusions.  Thus the motion to dismiss by Flemming and Denmead must be denied.

Bally's motion to dismiss, however, requires further analysis.  Bally's, the corporate entity, is not alleged to have acted in concert or conspired with Trooper Nepi.  Instead, Lassoff seeks judgment from Bally's on a vicarious liability theory.

Neither the Third Circuit nor the Supreme Court has answered whether a private corporation may be held liable under a theory of respondeat superior in § 1983 actions.  However, the Supreme Court's decision in *Monell v. Department of Social Services* provides guidance.  436 U.S. 658 (1978).  *Monell* held that municipalities could not be held vicariously liable in § 1983 actions.  Extrapolating the Court's reasoning in that case, other courts, including this one, have ruled that private corporations may not be held vicariously liable.  *See Taylor v. Plousis*, 101 F. Supp. 2d 255, 263 & n.4 (D.N.J. 2000)(Irenas, J.)(noting that "almost every court to have considered the issue has held that a

private corporation . . . may not be held vicariously liable under § 1983"); *Victory Outreach Ctr. v. Melso*, 371 F. Supp. 2d 642, 646 (E.D. Pa. 2004).

In *Powell v. Shopco Laurel Company*, the Fourth Circuit held in a very similar case, that a private corporation could not be held vicariously liable in a § 1983 action.  687 F.2d 504, 506 (4th Cir. 1982).  Powell brought suit against a shopping mall company and its private security guard for the alleged assault and battery he suffered at the hands of the security guard.  *Id.* at 505.

At the security guard's request, Powell "agreed to accompany" him to the security office as part of a shoplifting investigation.  *Id.*  While en route, the security guard allegedly hit Powell.  *Id.*  The security guard later arrested Powell for assault and battery, disturbing the peace, and resisting arrest, of which Powell was subsequently acquitted.  *Id.*

Affirming the district court's judgment on the pleadings in favor of the shopping mall, the court held that the reasoning of *Monell* applies with equal force in cases involving private corporations.  *Id.* at 506.  The same result should obtain here.  Accordingly, the § 1983 claims against Bally's will be dismissed.[25]

---

[25]  Bally's suggests that we decline to exercise supplemental jurisdiction over the state law claims remaining against it.  Given our disposition regarding the other claims and parties in this suit, we find the interests of judicial efficiency are better served through the Court's

23

**IV.**

For the reasons explained above, all claims asserted against the State of New Jersey, the New Jersey State Police, the "New Jersey State Police Division of Gaming Enforcement," and Trooper Nepi in his official capacity will be dismissed.

With regard to the claims against Trooper Nepi in his individual capacity, all claims for non-intentional torts (Count 4 in its entirety and all other Counts to the extent they are based on non-intentional conduct) will be dismissed for failure to comply with the notice provisions of TCA. Additionally, for the reasons stated above, Counts 6, 7, and the federal statutory claims asserted in Counts 8 and 9 will be dismissed for failure to state claims.

Consequently, the following claims asserted against Trooper Nepi in his individual capacity will remain: (a) all state common law claims for intentional torts encompassed by Counts 1, 3, 8, 9 and 10 and (b) Lassoff's claims under Section 1983 encompassed by Counts 2 and 5.

As to Bally's, all federal statutory claims against it (see Counts 2, 5 and 8) will be dismissed. All other state common law claims against it will remain.

The motion of Defendants Flemming and Denmead will be denied except that Count 8, to the extent that it states a claim against

_____

exercise of supplemental jurisdiction. Therefore we will not dismiss the remaining state law claims against Bally's.

24

them under § 1985(3), will be dismissed.

    The Court will issue an appropriate Order.


Date: February <u>8th</u>, 2006

                                    s/*Joseph E. Irenas*
_____
                          JOSEPH E. IRENAS, S.U.S.D.J.