UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SAMUEL J. LASSOFF,          :

                              :   HONORABLE JOSEPH E. IRENAS

       Plaintiff,      :

                              :   CIVIL ACTION NO. 05-2261 (JEI)

    v.                 :

                              :   **OPINION**

STATE OF NEW JERSEY, et al.,  :

                              :

       Defendants.     :

                              :

**APPEARANCES:**

LASSOFF LAW ASSOCIATES
By:  Samuel Lassoff, Esq.
1616 Walnut Street, Suite 1105
Philadelphia, PA 19103
       Counsel for Plaintiff

OFFICE OF THE ATTORNEY GENERAL
By:  Tamara Rudow, Esq.
R.J. Hughes Justice Complex
CN 112
25 Market Street
Trenton, NJ 08625
       Counsel for Defendant Nazareno Nepi

**IRENAS,** Senior District Judge:

Presently before the Court is Defendant Nazareno Nepi's Motion for Summary Judgment.[1]  For the reasons set forth below, the Motion will be granted as to Plaintiff's claims under federal

---

[1]  Defendant New Jersey State Trooper Nepi, in his individual capacity only, is the only remaining defendant to this suit.

law, and the Court will decline to exercise supplemental

jurisdiction over the remaining state law claims.[2]

# I.

Plaintiff Samuel Lassoff was gambling at Bally's casino on

the night of November 1, 2002, and into the morning of November

2, 2002, when he had a physical confrontation with another

gambler, Brian Taylor,[3] at the poker table where they both were

playing.

According to Lassoff, Taylor, without warning, and without

provocation, abruptly lunged across the poker table, grabbed

Lassoff by the throat, and ripped his T-shirt in the process.

According to witness statements taken by Bally's Security

personnel shortly after the incident, Lassoff called Taylor a

"bitch," prompting Taylor to grab Lassoff.  Michael Chaplan, a

casino patron, reported,

> During the course of the hand, [Lassoff] called
> [Taylor] a 'bitch' without any prior provocation on
> the part of [Taylor]. [Taylor] then came across the
> table grabbing [Lassoff] by the shirt with both
> hands near the neck area.  He ripped his shirt while
> doing this but at no time tried to strike or even
> shake [Lassoff].  He just grabbed his shirt
> forcefully. [Taylor] said 'who are you calling a
> bitch[?]' as he did this. [Lassoff] replied 'It's OK
> calm down.  I'm just drunk.  I'm drunk.'

---

[2]  The Court has subject matter jurisdiction pursuant to 28 U.S.C.
§§ 1331 and 1367.

[3]  Although Taylor is named as a defendant in this case, he is deceased
and was never served with process.

(Rudow Decl. Ex. N).

Similarly, Marisol Gomez, the poker dealer, stated,

I was dealing one hand and two players were talking
[to] each other about the game.  Then one of them
was drunk and told to [sic] the other player that he
is a bitch.  And the player got so mad and grad
[sic] the other player and broke his T-shirt.  Then
I called the floor person and he called the security
guards and they take them outside.

(Id.).

Taylor also gave a statement, explaining,

On Sat. morning Nov. 2, 02 about 3 a.m. I, Brian
Taylor, was sitting at a poker table when another
player across the table from me didn't really seem
to be interested in the game was having a ongoing
conversation with his girlfriend.  It was his turn
to pay the bet the player called the bet but hadn't
put in his money.  I said to the player its $5.00
dollars to you.  He seemed to ignore me and the
dealer and everybody else at the table.  I pointed
to the money on the table and said put in your 5.00
at that he grabbed me by my wrist and I stood up and
he reached over and grabbed my shirt and called me a
bitch.  I got my shirt torned [sic] and he was still
running his mouth and using a lot of foul language.
I reached out to him to sit him down and he pulled
away and his shirt got ripped.  This guy was
intoxicated loud.

(Id.).  Lassoff did not give a statement to Bally's security that

night.  However, he continually denies that he was intoxicated.[4]

He also denies that he called Taylor a "bitch," or touched Taylor

in any way.

_____

[4]  Lassoff testified that over the course of approximately four hours of
gambling, "I had a maximum of three [complimentary alcoholic] drinks.  A
maximum.  I was drinking also what's called a Shirley Temple.  I was also
drinking hot chocolate." (Lassoff Dep. p. 96).

3

Bally's security personnel arrived at the poker table and both Lassoff and Taylor were escorted to the fourth floor of the casino to make complaints against each other.  Lassoff testified that he voluntarily went with security for the purpose of making a complaint, and believed that he was free to leave if he decided against making a complaint.  (Lassoff Dep. p. 148-49).

Upon arrival at the fourth floor offices,[5] around 3 a.m., Taylor was placed in a holding cell, while Lassoff took a seat in the security office across the hall.  Defendant Nepi first spoke with Taylor, then entered the room where Lassoff was waiting to sign a complaint.  Lassoff and Nepi provide two different accounts of what happened next.

According to Lassoff, at first Nepi and Bally's Security personnel, Dori Diaz, were with him in the office.  Then,

> at some point Detective Nepi instructed basically everyone out of the room, and it was just myself and Detective Nepi.  And then Detective Nepi was seated and I was seated.  My tush was in a seat.  I was silent and Detective Nepi, after asking me a series of questions regarding the events that transpired, basically said, 'Do you want to file a complaint?'  He basically said, 'Are you going to file a complaint?'
>
> I said, 'Yes,' you know, 'I'm going to go file a complaint and I want a new T-shirt if you'll get me one.'
>
> And he's like, 'Do you really want to do that?'
>
> And I said, 'Yes, I really want to do that.'

---

[5]  Bally's security office and the State Police office are both located on the fourth floor of the casino.

And he kind of got really angry. He said, 'Are you sure?'

And I said, 'Yes.'

And then I was just kind of sitting there, and he just– he gets silent.  He doesn't make any instruction to me.  I'm just sitting there silent. At that point I know I'm in trouble.  I am in serious trouble.  The door is shut.  It's just myself and Detective Nepi.  There is no one else present.  This door-- I'm a hundred percent sure it is shut, and everyone-- there may be people outside the door I mean, I saw people that were in the room leave, but it's just me and Detective Nepi.  And Detective Nepi gets up, walks over towards me.  And at this point I'm not moving, I'm sitting down, I am not doing anything.  And he just grabs me by my kind of shoulder area and just picks me up and then kind of like hits me in the back and it forces me against the wall.  And the wall that I'm describing that he puts my head into is the-- if you're sitting in the chair, the door is on the left.  So he puts me against that wall and then he takes-- I guess he's got my arms behind my back.  He grabs me [sic] arms and puts them behind my back and tries to rip them up my-- to the back of my neck.  I'm screaming in pain. . . . At this point I'm actually saying-- probably saying 'I'm sorry' constantly to him.  'I'm sorry. I'm sorry. What are you doing? I don't want to file charges.  Whatever.  I'm sorry.  What do you want to hear?'

And he just starts ripping-- I'm like, 'You're break [sic] my your [sic] arm, you're going to break my arm.'

And he just keeps ripping them up.  And he takes the handcuffs and he cuffs them in his hand and he cranks them up and a [sic] rips the cuffs up my hands, and I started to bleed.  And he also– during the scuffle with Detective Nepi, my finger was bleeding, and I was pretty banged up.  I mean, I had gotten hit in the back and my arms were brought almost up to the back of the neck.  It was much worse of an attack than what happened at the table. I mean, I was already traumatized once and now I'm there again, traumatized again.

5

(Lassoff Dep. p. 162-64).  Lassoff claims "the actual assault by Detective Nepi lasted approximately a minute."  (Id. at p. 195)

Lassoff also testified that before Nepi "attacked" him, Nepi "interrogated" him without reading him his *Miranda* rights, and denied Lassoff the assistance of his fiancé, who is a licensed attorney.[6]

Nepi testified that Dori Diaz and other Bally's security personnel were in the office when Lassoff was restrained and handcuffed.  (Nepi Dep. 96-97).  Nepi admits that "I grabbed [Lassoff] by [his] arm and put handcuffs on [him] when I pushed [him] up against a wall or filing cabinet, whatever was in the office there where I handcuffed [him.]" (Id. at 94).  Explaining why he decided to restrain and handcuff Lassoff, Nepi stated,

> I was the only police officer in the room when [Lassoff was] handcuffed.  And the threat that [he] posed is that [he was] constantly out of [his] chair, flailing [his] arms around stating [his] side of the story, and [he] became too close to my personal space.
> And when someone's intoxicated to the state in which [he] was intoxicated, and starts flailing their arms around, I don't know if there's a possibility that I could be struck or someone else could be struck.  So that's why [he was] handcuffed.
> [He was] restrained for [his] own safety, for my safety, for the safety of the peoples [sic] in that room.

(Id. at 101-02).

---

[6]  Lassoff's fiancé (now his wife), Lisa Kaplan Lassoff, is a tax, trusts and estates attorney.

Nepi further testified that Lassoff "never" asked for an attorney, nor did Lassoff inform him that Lassoff's fiance was an attorney.  (Id. at 25).  Nepi's official report states that he read Lassoff his *Miranda* rights before asking him any questions in the security office.  (Rudow Decl. Ex. L).

Dori Diaz's testimony is similar to Nepi's.  She stated that she was present when Nepi handcuffed Lassoff and that Lassoff's demeanor was that of a "belligerent drunk" who "was verbally abusive to everyone."  (Diaz Dep. p. 16, 9).  Describing the events just prior to Nepi handcuffing Lassoff, Diaz testified,

> Detective Nepi spoke to Mr. Lassoff.  Then he told him to-- you know, he would be right back.
>
> Detective Nepi stood up, turned around to walk away. And I observed Mr. Lassoff jump out of his chair. And it looked like he was going after Detective Nepi.
>
> . . .
>
> I made a sound, and Nepi turned around.  And that's when he got a hold of Mr. Lassoff, and he put him up against the wall so he couldn't move.  And he handcuffed him.

(Id. at 12).

After Nepi handcuffed Lassoff, he escorted him across the hall to the holding cell.[7]  The undisputed evidence shows that Nepi removed the handcuffs shortly after placing Lassoff in the

---

[7]  Taylor was removed from the cell before Lassoff entered it.

cell.[8]  While in the cell, Lassoff began to talk to a
surveillance camera.[9]  Lassoff claims that he was "trying to show
the injuries, the blood, the bruises, the scars [from Nepi's
actions]."  (Lassoff Dep. p. 247).  He explained,

> And I'm talking into the camera and trying to say,
> 'Look, I want my attorney.  I'm being imprisoned
> here falsely.'  And I'm trying to create any type of
> record because I don't even know if I'm going to get
> out of there alive.

(Id. at 247).  Lassoff also admits that he was screaming and, at
one point, began to cry.  (Id. at 318, 199).  Nepi testified that
Lassoff "went from yelling and screaming to crying, to real
passive, to sometimes almost asleep."  (Nepi. Dep. p. 106).

Lassoff remained in the holding cell for approximately one
hour.  (Nepi Ex. 2).  During that time, Nepi entered the cell to
obtain Lassoff's signature on a criminal complaint against
Taylor, and to give Lassoff copies of criminal complaints made
against him by Taylor and Nepi, respectively. (Id.).  Later,
Lassoff was released and left the casino with his fiancé.

Taylor's criminal complaint (the "Taylor complaint") charges
that Lassoff committed Harassment in violation of N.J.S.A. 2C:33-
4(b).  (Rudow Decl. Ex. M).

---

[8]  Lassoff testified he was "briefly" handcuffed, for "probably a few
minutes."  (Lassoff Dep. p. 264).  Likewise, Nepi has submitted evidence
documenting that Lassoff was handcuffed for eleven minutes at most.  (Nepi Ex.
2).

[9]  Neither party has submitted the videotape from the surveillance
camera.

Nepi's criminal complaint (the "Nepi Complaint") charges that Lassoff committed

> the act of Disorderly Conduct specifically by acting
> in a tumultuous behavior and using offensively
> coarse and abusive language while in the presence of
> the public to wit; a poker game at the Bally's Hotel
> & Casino.  Contrary and in violation of Disorderly
> Conduct [N.J.S.A.] 2C:33-2.

(Id.).

On November 21, 2002, both complaints were dismissed. Apparently, the Taylor Complaint was dismissed for lack of prosecution when Taylor failed to appear in court.  (Nepi Ex. 22).  It is undisputed that the Nepi Complaint was dismissed upon the State's motion because N.J.S.A. 2C:33-2(b) has been held unconstitutional.[10]  (Id.).

Also on November 21, 2002, Lassoff filed a complaint against Nepi with the New Jersey State Police Office of Professional Standards.  (Nepi Ex. A-1).  Lassoff asserted that Nepi improperly arrested him, assaulted him, and denied him assistance of counsel.  (Id.).

On January 5, 2003, Nepi signed a second criminal complaint against Lassoff for his actions at Bally's casino.  This time, the complaint charged that Lassoff committed

> the act of Disorderly Conduct specifically by
> engaging in fighting or threatening, or in violent
> or tumultuous behavior with the purpose to cause
> public inconvenience, annoyance or alarm or
> recklessly creating a risk thereof, while on the

---

[10] *See State in the interest of H.D.*, 206 N.J. Super. 58 (App. Div. 1985).

9

> gaming floor at Bally's Park Place Casino / Hotel,
> Atlantic City, NJ.

(Nepi Ex. 23).  Lassoff claims that Nepi filed the second
complaint in retaliation for Lassoff's complaint to the Office of
Professional Standards.  Nepi, however, denies that he was
motivated by Lassoff's complaint.  Nepi submits the "Principal
Acknowledgment" form he signed on January 16, 2003 (eleven days
after he signed the second criminal complaint), which informed
him of his rights with regard to the internal investigation of
Lassoff's allegations.  (Nepi Ex. 20).  He also submits a letter
dated December 27, 2002, from the Atlantic City Municipal
Prosecutor to Nepi's supervisor,[11] in which the prosecutor
explains that the first criminal complaint was dismissed by the
State and suggests language for filing a new Disorderly Conduct
complaint against Lassoff.  (Nepi Ex. 22).

Lassoff went to trial before Atlantic City Municipal Court
Judge Bruce F. Weekes on June 5, 2003.  The State put on its
case, which consisted of the testimony of Marisol Gomez, Dori
Diaz, and Nepi.  (Rudow Decl. Ex. G).  Lassoff's counsel then
moved to dismiss the case, arguing that the State had failed to
sustain its burden of proof on the Disorderly Conduct charge.
(Id.).  Judge Weekes granted the motion and dismissed the case.
(Id.).

---

[11]  Nepi was carbon copied on the letter.

Lassoff filed this suit on September 22, 2004.  Nepi previously moved to dismiss the claims asserted against him, and this Court granted in part and denied in part the motion.[12]  The following claims against Nepi, in his individual capacity only, remain at this time: Section 1983 claims encompassed by Counts 2 and 5 of the Second Amended Complaint; and all state common law claims for intentional torts encompassed by Counts 1, 3, 8, 9, and 10.[13]  Nepi moves for summary judgment on the remaining claims.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on

---

[12] *See Lassoff v. State of New Jersey, et al.,* 414 F.Supp.2d 483 (D.N.J. 2006).

[13] The intentional torts alleged are false arrest, false imprisonment, assault and battery, malicious prosecution, intentional infliction of emotional distress, conspiracy, defamation, invasion of privacy, and false light.

which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  A plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid summary judgment.  *See Celotex*, 477 U.S. at 324.

## III.

Counts 2 and 5 of the Second Amended Complaint both assert that Nepi "violated Samuel J. Lassoff's procedural and substantive due process rights guaranteed by the First, Fourth, Ninth, and/or Fourteenth Amendments to the United States Constitution, rendering [Nepi] liable to plaintiff Samuel J. Lassoff pursuant to 42 U.S.C. § 1983."[14]

### A.

The Ninth Amendment to the United States Constitution provides: "The enumeration in the Constitution, of certain

---

[14]  Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. In *Onyiuke v. N.J. State Supreme Court*, the Third Circuit affirmed the district court's holding that "the Ninth Amendment does not provide an independent basis for asserting a civil rights claim; rather, a section 1983 claim must be premised on a specific constitutional guarantee." 242 F.App'x 794, 796 (3d Cir. 2007).[15] Because Lassoff bases his claims on specific constitutional guarantees found in the First, Fourth, and Fourteenth Amendments, summary judgment is warranted on the Ninth Amendment claim.[16]

B.

Lassoff's First Amendment claim of retaliatory prosecution and Fourth Amendment claim of false arrest may be addressed together, as both claims require proof that Nepi lacked probable

---

[15]   *See generally, Osborn v. United States,* 385 U.S. 323, 353 n.15 (1966) (Douglas, J., dissenting) ("The Ninth Amendment . . . was intended to preserve the underlying theory of the Constitutional Convention that individual rights exist independently of government, and to negate the Federalist argument that the enumeration of certain rights would imply the forfeiture of all others. The Ninth is simply a rule of construction, applicable to the entire Constitution."); *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth Amendment is not an independent source of individual rights; rather, it provides a 'rule of construction' that we apply in certain cases.").

[16]   Likewise, to the extent Lassoff asserts that the alleged constitutional violations are violations of his procedural due process rights, the Court concludes that his claims are adequately encompassed by the other claims discussed *infra*.  Accordingly, summary judgment will be granted on the procedural due process claim.

cause.  *See Hartman v. Moore*, 547 U.S. 250 (2006); *Wright v. City of Phila.*, 409 F.3d 595 (3d Cir. 2005).[17]

"An arrest is made with probable cause if 'at the moment the arrest was made the facts and circumstances within the offending officer['s] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'"  *Wright*, 409 F.3d at 602 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  "The constitutional validity of the arrest does not depend on whether the suspect actually committed any crime."  *Id.*

Nepi had probable cause to arrest Lassoff for the incident at the poker table.  According to Nepi's official investigation report, he spoke to Taylor, who told him that "Lassoff stood up, grabbed Taylor by the wrist and shirt and called him a 'bitch.'" (Rudow Decl. Ex. L).  Nepi also interviewed Marisol Gomez and Michael Chaplan, who both generally corroborated Taylor's story, though neither Gomez nor Chaplan stated that Lassoff touched Taylor.  (Id.).  These facts were sufficient to lead a reasonably

---

[17]  The Second Amended Complaint also asserts a Fourth Amendment malicious prosecution claim, however, the Court previously dismissed that claim, holding that Lassoff failed to allege any seizure or limitation on his liberty.  *See Lassoff*, 414 F. Supp. 2d at 492.  Even if the Fourth Amendment malicious prosecution claim were not dismissed, the Court's holding that Nepi had probable cause to arrest Lassoff would defeat the Fourth Amendment malicious prosecution claim.  *See Wright*, 409 F.3d at 604.

14

prudent person to conclude that Lassoff had committed the crimes of Harassment[18] and Disorderly Conduct[19] under New Jersey law.

The Court reaches this conclusion even though Lassoff denies that he was intoxicated and that he provoked Taylor.  Whether Taylor, Chaplan, and Gomez were actually telling the truth is not the inquiry.  Lassoff does not dispute that those witnesses said what they said, regardless of the statements' truth.  "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603.  Accordingly, Lassoff's Fourth Amendment false arrest claim fails.[20]

The First Amendment retaliatory prosecution claim also fails, but requires further discussion.  Lassoff's theory appears to be that Nepi "reinstated" the Disorderly Conduct charge in

---

[18]  "[A] person commits a petty disorderly persons offense if, with purpose to harass another, he: a. Makes . . . a communication . . . in offensively coarse language, . . . b. Subjects another to . . . offensive touching, or threatens to do so; or c. Engages in any other course of alarming conduct . . . with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4.

[19]  "A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he (1) Engages in fighting or threatening, or in violent or tumultuous behavior."  N.J.S.A. 2C:33-2(a).

[20]  Alternatively, Nepi is entitled to qualified immunity because it would not be clear to a reasonable officer that Lassoff did not engage in disorderly conduct.  *See Gilles v. Davis*, 427 F.3d 197, 206 (3d Cir. 2005)("While the Court of Common Pleas held Gilles' speech was insufficient to constitute disorderly conduct, it does not necessarily follow that the arresting officers are civilly liable for the arrest.  Qualified immunity encompasses mistaken judgments that are not plainly incompetent.").

retaliation for Lassoff's complaint against Nepi.  First, as previously discussed, Nepi had probable cause to believe that Lassoff had committed the offense of Disorderly Conduct. Witnesses told Nepi that Lassoff was intoxicated, that he cursed at another patron, and Taylor stated that Lassoff stood up from the poker table and grabbed his wrist.  These actions are sufficient to lead a reasonably prudent person to conclude that Lassoff had "recklessly created a risk of" "public inconvenience, annoyance, or alarm" by "engaging in violent or tumultuous behavior."  N.J.S.A. 2C:33-2(a).[21]

Second, the undisputed evidence does not support a conclusion that Nepi acted with the requisite intent to retaliate against Lassoff for his alleged protected speech.  No reasonable jury could conclude on this record that retaliation was the "but-for cause" of Lassoff's prosecution.  *Hartman*, 547 U.S. at 256;

---

[21]  Lassoff's argument that his constitutional rights were violated by an arrest pursuant to a statute that was previously held unconstitutional (N.J.S.A. 2C:33-2(b)) must fail because Nepi had probable cause to arrest Lassoff for violation of N.J.S.A. 2C:33-2(a) (and N.J.S.A. 2C:33-4).  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.")(internal citations and quotations omitted); *cf. Gilles*, 427 F.3d at 205 ("Where part of speech constitutes fighting words, the police may arrest for disorderly conduct even though other parts of speech may be less provocative.").

16

*see also Mt. Healthy City Sch. Dist. Bd. of Ed.*, 429 U.S. 274, 287 (1977).

Nothing in the record indicates that Nepi knew that Lassoff had made a complaint against him before Nepi signed the second criminal complaint. Indeed, the Principal Acknowledgment form, which notified Nepi of his rights with regard to the internal investigation of Lassoff's complaint, is dated eleven days after Lassoff filed his complaint. Moreover, the undisputed record evidence demonstrates that the city prosecutor suggested that Nepi could file a new criminal complaint for Disorderly Conduct. On December 27, 2002, (i.e., before Lassoff filed his complaint against Nepi), Assistant Municipal Prosecutor Christopher Robertson wrote,

> Mr. Lassoff's conduct, as summarized in Detective Nepi's incident report, while being escorted to the NJSP/DGE Office could be considered as Disorderly Conduct. His loud and boisterous behavior towards Detective Nepi and the use of profanity while being escorted off the casino floor was disorderly. My suggestion is that the complaint be filed omitting the specific language (a poker game) at the Bally's Hotel & Casino.

(Nepi Ex. 22).

The record evidence fails to establish a prima facie case of retaliation in violation of the First Amendment. Summary judgment is warranted on the First Amendment retaliatory prosecution claim and the Fourth Amendment claim for false arrest.

C.

In the Second Amended Complaint, Lassoff does not explicitly assert that Nepi violated his Fifth Amendment rights.[22]  However, in his submissions to this Court, and in his complaint to the New Jersey State Police Office of Professional Standards, Lassoff asserts that Nepi: (1) denied him the assistance of his lawyer; and (2) failed to warn him of his *Miranda* rights while being questioned on the fourth floor of the casino.[23]

The Fifth Amendment guarantees the right against compelled self-incrimination in a criminal case.  *Chavez v. Martinez,* 538 U.S. 760, 766 (2003)(plurality).  As the Supreme Court and Third Circuit have made clear, the requirements of *Miranda* and its progeny are prophylactic rules intended to safeguard the rights guaranteed by the Fifth Amendment, and not substantive rights in and of themselves.  *See Chavez,* 538 U.S. at 770; *Renda v. King*,

---

[22]  Lassoff is a licensed attorney in New Jersey and Pennsylvania, and is representing himself in this matter.  Because Lassoff is a licensed attorney, the Court need not afford his Second Amended Complaint "the liberal construction given to pro se filings."  *Wiltz v. Middlesex County Office*, 249 F.App'x 944, 948 (3d Cir. 2007).  Nonetheless, because the Court holds that no actionable Fifth Amendment violation occurred, the Court will proceed as if Lassoff has pled a Fifth Amendment violation.

[23]  The Second Amended Complaint alleges, "Plaintiff Samuel Lassoff told . . . Nepi . . . that he was with his attorney, Lisa M. Kaplan, Esquire, and wanted her present during their questioning and/or custodial investigation.  Plaintiff was denied the assistance of counsel . . . throughout [the] custodial interrogation and questioning despite several requests to [Nepi] . . . for an attorney to be present." (Second Amend. Compl. ¶¶ 27-28).  The Second Amended Complaint further alleges, "Plaintiff Samuel Lassoff was thereafter thrown into a tiny locked cell on the fourth floor of Bally's casino for approximately one hour and again questioned without the assistance of counsel despite several requests to have counsel New Jersey licensed counselor Lisa Kaplan, Esquire, be present during custodial interrogation/questioning." (Second Amend. Compl. ¶ 32).

18

347 F.3d 550, 557-59 (3d Cir. 2003); *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994).  Thus, Lassoff "cannot bring a claim pursuant to 42 U.S.C. § 1983 merely for being questioned before being provided with *Miranda* warnings.  Likewise, he has no free-standing Fifth Amendment claim for denial of counsel during his interrogation." *James v. York County Police*, 160 F.App'x 126, 133 (3d Cir. 2005), *cert. denied,* 127 S.Ct. 210 (2006); *see also United States v. Patane,* 542 U.S. 630, 637 (2004) ("The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn.").  "It is the use of coerced statements during a criminal trial . . . that violates the Constitution." *Renda*, 347 F.3d at 559.

Accordingly, the Court must look to what statements, if any, were used at Lassoff's trial, and then look to the surrounding circumstances when those statements were made, to determine if they were coerced.  At Lassoff's trial, Nepi testified about statements Lassoff made while in Bally's security office.[24]  The issue is whether Lassoff was "in custody" at the time he made those statements, because it is the custodial interrogation of a defendant that triggers Fifth Amendment protection from self-

---

[24]  Importantly, Nepi did not testify about statements Lassoff made while in the holding cell. Indeed, Nepi's trial testimony does not refer to Lassoff being handcuffed or placed in a holding cell at all. Lassoff's counsel successfully argued at trial that because Lassoff was charged with disorderly conduct arising out of his actions on the casino floor, evidence about his behavior after leaving the casino floor should not be admitted.

incrimination.  *See Alston v. Redman*, 34 F.3d 1237, 1244 n.4 (3d Cir. 1994) ("As the Supreme Court has repeatedly noted, the *Miranda* safeguards . . . serve only to protect the privilege against self-incrimination in the context of a custodial interrogation.").

The Court holds that Lassoff was not in custody when he spoke with Nepi in the security office.  "A person is in custody when he either is arrested formally or his freedom of movement is restricted to 'the degree associated with a formal arrest.'" *U.S. v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006)(quoting *U.S. v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999)).

> For a person to be in custody when he has not been arrested, something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so. . . .
>
> Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

*Id.* at 359-60 (internal citations and quotations omitted).

Viewing the facts in the light most favorable to Lassoff, the record does not support the conclusion that Lassoff was in custody.  Lassoff unequivocally testified that he voluntarily went to Bally's security offices, he was not being helped or

guided to the offices, and he believed he could have left the casino if he did not want to file a complaint against Taylor. (Lassoff Dep. p. 148-50).[25]  He further stated that upon reaching the fourth floor, he passed through a "lobby" and entered an "office," with a desk, where he "seated [himself] in a wooden chair."  (Id. at 151).  Describing the room, he said, "it definitely was an office setting."  (Id. at 151).

Lassoff stated that he was in the office alone with Nepi, who was not in state police uniform, (Nepi Dep. P. 124),  for "approximately 12 minutes total."  (Lassoff Dep. p. 173).  With regard to the actual interaction between Lassoff and Nepi in the office, Lassoff testified:

> Q: So when you were initially sitting in that chair and you claim . . . that Detective Nepi shut the door, you're not handcuffed?
>
> A: Correct.
>
> Q: Once he shut the door, where did Detective Nepi go, according to your testimony?
>
> A: He went back to his seat.
>
> Q: So he's now sitting at the desk and you're in front of the desk?
>
> A: I'm in my chair seated and answering his questions.
>
> . . .
>
> Q: Okay . . . Detective Nepi is sitting behind the desk, you're in front of the desk.  And is that the

---

[25]  Lisa Kaplan Lassoff also testified that Samuel Lassoff "just walked out on his own accord." (Kaplan Lassoff Dep. at 26).

point in time that he was asking you whether or not you wanted to file a charge?

A: No.

Q: What was he saying to you or you saying to him, according to your testimony?

A: He was interrogating me in regards to what happened. . . . And I was asking– I said, 'Look, my girlfriend's here. She's an attorney. She's representing me. She's right outside. And if you're going to continue to ask me questions, I want her present.'

. . .

Q: So he's asking you questions about what happened because you had apparently indicated that you wanted to file a complaint, correct?

A: Yes.

Q: And he's asking you questions about what had happened, you then, according to your testimony, say to him, 'I want a lawyer present?'

A: During the discussions, during his interviews.

Q: Okay. And was he – according to your testimony, was he still seated behind the desk when this happened?

A: Yes, he was still behind the desk at this point.

(Id. at 168-71).

Considering all of the surrounding circumstances in the light most favorable to Lassoff, a reasonable juror could only conclude that Lassoff was not in custody when he answered questions allegedly without being Mirandized and requested his attorney. His testimony clearly establishes that he was physically restrained and handcuffed after he spoke with Nepi

22

about the incident at the poker table.  Accordingly, Lassoff's
Fifth Amendment rights were not violated.

Alternatively, even if Lassoff was in custody at the time he
spoke to Nepi, Nepi is entitled to qualified immunity.
"[G]overnment officials performing discretionary functions
generally are shielded from liability for civil damages insofar
as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In
determining whether Nepi is entitled to qualified immunity, the
Court must decide "whether the right was clearly established,"
and in particular, "whether it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  The
test for qualified immunity is an objective one. *Anderson v.
Creighton,* 483 U.S. 635, 641 (1987); *Sharrar v. Felsing*, 128 F.3d
810, 826 (3d Cir. 1997).

In light of the undisputed facts concerning the
circumstances under which Lassoff answered Nepi's questions in
Bally's security office, it would not be clear to a reasonable
officer that Lassoff was in custody and therefore required
*Miranda* protections.  Accordingly, Nepi is entitled to qualified
immunity on the Fifth Amendment claim and summary judgment is
warranted.

D.

Lastly, Lassoff asserts that Nepi used excessive force in restraining and handcuffing him, in violation of the Fourth Amendment.

The use of excessive force during an arrest is an unlawful seizure under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).[26]   "In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"   *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)).   "Other factors include 'the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."   *Id.* (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

---

[26]   Because Lassoff's excessive force claim is properly characterized as a claim for violation of his Fourth Amendment rights, summary judgment will be granted on the substantive due process claim.   *See Graham,* 490 U.S. at 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [arrest by excessive force] claims.").

24

Lassoff asserts that Nepi handcuffed him too tightly, causing scrapes and bruises on his wrists, and causing his pinky finger to bleed.  (Lassoff Dep. p. 268-69).  Lassoff also claims that Nepi forcefully pushed him up against a wall, face first, pulling his arms behind his back, causing him to scream in pain.  (Id. at 178-79).  It is undisputed that Lassoff never sought medical treatment for his alleged injuries.  Lassoff also concedes that Nepi's alleged "assault" lasted approximately one minute, and that he was only "briefly" handcuffed. (Id. at 264).

Applying the above factors to the record evidence viewed in the light most favorable to Lassoff, the Court concludes that no Fourth Amendment violation occurred.  This is not a case like *Kopec v. Tate*, where the handcuffed arrestee began to faint from the pain of the handcuffs, specifically complained to the arresting officer that he had lost feeling in his hand, and suffered permanent nerve damage requiring treatment from a hand surgeon. 361 F.3d 772, 774, 777 (3d Cir. 2004).  Instead, this case is more like *Gilles*, where "obvious visible indicators" of pain were absent, and the handcuffed arrestee did not seek or receive any medical treatment. 427 F.3d at 207-08.  The Third Circuit in *Gilles* held that, "the facts alleged constitute insufficient evidence as a matter of law for excessive force by handcuffing."  *Id.* at 208.  This Court reaches the same holding in this case.

The fact that Nepi forced Lassoff face-first up against a wall, and forced his arms behind his back, does not require a

different conclusion.  As already noted, Lassoff never sought any medical attention for his alleged injuries.  Moreover, Lassoff does not claim that he suffered any injuries (other than temporary pain) from being forced against the wall.

Alternatively, Nepi is entitled to qualified immunity.  A reasonable officer in Nepi's situation would conclude that his conduct comported with the requirements of the Fourth Amendment. *See Gilles,* 427 F.3d at 203-04.

Summary judgment will be granted on the Fourth Amendment excessive force claim.

### IV.

For the above-stated reasons, Nepi's Motion for Summary Judgment will be granted as to all claims made pursuant to Section 1983.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 444 (3d Cir. 1997) (the decision to decline to exercise supplemental jurisdiction over a plaintiffs' remaining state law claims "is committed to the sound discretion of the district court").  An appropriate order will be issued.


March 31, 2008                         s/ Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**

26